McGUIRE v. STATE BANK OF TREMONTON et al.

Nos. 2934, 2991.   Decided March 29, 1917.   (164 Pac. 494.)

1. INTERPLEADER—JUDGMENT. Where a litigant tenders the money claimed by two other parties into court, no judgment in his favor for the money can legally be entered.   (Page 384.)

2. APPEAL AND ERROR—ASSIGNMENTS OF ERROR—JOINT ASSIGNMENTS. Where several appellants jointly assign errors, an assignment bad as to one of them must be held bad as to all.   (Page 384.)

3. APPEAL AND ERROR—REVIEW—FINDINGS—PRESUMPTIONS. Where an appeal is based on the judgment roll without a bill of exceptions, the presumption is that the findings were justified by the evidence.   (Page 385.)

4. EXCEPTIONS, BILL OF—TIME OF SERVICE—STATUTE. A judgment was entered on April 3d, and modified on May 15th, and an appeal from the judgment as modified taken. Notice of entry of judgment was given on April 3d, and on April 22d an extension of time for serving a bill of exceptions was granted. Service was acknowledged on the 7th of June. Comp. Laws 1907, Section 3286, gives thirty days to an appellant to prepare and serve a proposed bill of exceptions and additional time of forty-five days may be given within which to prepare such bill. Held, that the bill was served, settled, and allowed within the time allowed by the statute.   (Page 385.)

5. BANKS AND BANKING—DEPOSIT—SPECIAL DEPOSITS—EVIDENCE. Where a deposit slip discloses nothing indicating that the money deposited is upon any condition whatever, it constitutes strong evidence that the money was not deposited for a special purpose, or as a special deposit.   (Page 387.)

6. BANKS AND BANKING—PRINCIPAL AND AGENT—SPECIAL DEPOSITS—ACTIONS. Where certain money is deposited in a bank by the agent of the owner in the name of the agent, and there is nothing to indicate that it is a special deposit, one who claims that the deposit was made on condition that it should remain intact until such time as the claimant and the owner of the money should adjust certain unlitigated claims which claimant preferred against the owner, and payment should be made in accordance with such settlement, must prove in order to recover such money that the deposit was in fact made for the purpose claimed by him, and that the agent had authority to make or enter into the agreement.   (Page 387.)

Appeal from District Court, First District; *Hon. J. D. Call,* Judge.

Action by A. D. McGuire against the State Bank of Tremonton and S. N. Cole.

From a judgment directing the deposit of money in question pending administration, all parties appeal.

REVERSED and remanded, with directions.

*W. J. Lowe* and *A. D. McGuire* for assignee.

*A. G. Horn* for defendant.

FRICK, C. J.

The plaintiff in his complaint in substance alleged that on the 26th day of December, 1913, one J. A. Brown was the owner of a certain sum of money, to wit, $380, which was placed on deposit with the defendant bank in the name of one J. N. Porter for the use and benefit of said Brown; that thereafter, on the 14th day of August, 1914, said Porter, in writing, duly assigned to the plaintiff all of his right, etc., to said $380 deposited as aforesaid, and that said J. A. Brown, on the 17th day of the same month, also in writing, duly assigned all of his right, etc., to said money to the plaintiff; that plaintiff duly notified said bank of said assignments and demanded payment of said money; and that said bank refused to pay the same. Plaintiff also alleges on information and belief that the defendant Cole makes some claim to said money, but that such claim is without right. Plaintiff prays judgment for the amount aforesaid, with interest.

The bank filed an answer in which, while not claiming any right to the money, yet it set forth that the money was deposited in the bank, and that it had a right to retain the same for a certain stated purpose, and that the defendant Cole claimed some right to or interest in said money on account of certain unsettled or unliquidated claims which arose out of some transactions theretofore had between said Cole and said Brown, plaintiff's assignee. The bank prayed that

said Cole be substituted as the real defendant in the action, and that it be discharged on depositing said money in court.

The defendant Cole filed an answer, and, excepting the disclaimer of interest and the tender of the money in court, he practically adopted the averments contained in the banks answer, and alleged that the money was left on deposit in the bank to await a settlement between him and said Brown, the owner thereof.

A trial to the court resulted in findings in which the court in substance found that the money in question was deposited in the bank to await the settlement of some unliquidated accounts which said Cole claimed existed between him and said Brown; and the court further found that "the defendant S. N. Cole has not established his claim to the said $380 or any part thereof." Upon the findings of fact the court made its conclusion of law in which it found:

"That neither plaintiff or defendants in this action are at the present time entitled to the said sum of $380, and that the said sum shall be deposited by the clerk of this court, in whose hands said money is now held, in some disinterested bank in Box Elder County, Utah, said sum to be deposited on interest, and to be held until an administrator may be appointed for the estate of said J. A. Brown, notice to creditors published, and the claim of the said S. N. Cole to such money be adjudicated, or until such time as the said S. N. Cole may otherwise establish his claim, or by the law be estopped from asserting the same."

Judgment was entered in conformity with the foregoing conclusion, from which both the plaintiff and the two defendants appeal.

The defendants' appeal was taken first, and it is predicated upon the judgment roll alone, and we will dispose of that first. The only assignments, although stated in different ways, are that the court erred in adjudging "that none of the parties to the action are entitled to the money sued for," that said bank had disclaimed all interest in said money and had tendered the same in court, and in requiring said money to be deposited as provided in the conclusion of law which we have copied in full.

It may be that the court erred in making its findings and in entering judgment in conformity with the conclusion of law aforesaid, yet there is absolutely nothing contained in the record presented by defendants' appeal from which we can determine that they are, or that either of them is, entitled to judgment. In view that the bank tendered the money in court, no judgment for the money could legally have been entered in its favor. That therefore disposes of the bank's appeal.

The bank and the defendant Cole, however, prosecute this as a joint appeal, and also file a joint assignment of errors. It is well settled that, where several appellants jointly assign errors, unless the assignments are good as to all who join therein, they must be disregarded as to all. In discussing the rule applicable to joint assignments of error in 3 C. J. p. 1352, section 1501, it is said:

"The rule being that upon a joint assignment of errors one of several appellants or plaintiffs in error cannot avail himself of errors which are not common to all, but which affect or injure him alone, that parties cannot jointly assign error or take advantage, on a joint assignment, of errors which affect them severally, and not jointly, and that a joint assignment of error must be good as to all who join therein, or it will not be available to any of them, and if it is not good as to one, it will be overruled or disregarded as to all."

In discussing the question of joint assignment of errors Mr. Elliott, in his work on Appellate Procedure (section 318), says:

"Where several parties unite in one assignment of errors, they will encounter defeat unless the assignment is good as to all. If the errors affect the parties severally and not jointly, the proper practice is for each party to assign errors, for the rule is well settled that a joint assignment will not permit one of several parties to avail himself of errors alleged on rulings which affect him alone, and not those with whom he unites in the assignment. The rule that a joint assignment of errors must be good as to all who unite in it is in harmony with the general principle of pleading which requires a demurrer, an answer, or a motion to be good as to all who join in it."

While there are some exceptions to the rule stated above, yet none of the exceptions apply here.

In view, therefore, that the bank and Cole have filed a joint assignment of errors, and in further view that the bank in no event is entitled to a judgment for the money, it cannot legally complain of the judgment that the court entered. The assignment of errors, therefore, being of no avail to the bank, it, for the reasons before stated, likewise cannot avail Cole.

If it should be assumed, however, that the rule respecting joint assignments of errors does not apply as between the bank and its co-appellant, Cole, yet the latter is in no position to complain of the judgment. As we have seen, the court found that "Cole has not established his claim to said $380 or any part thereof." The appeal is based on the judgment roll without a bill of exceptions. The presumption is that the evidence justified said finding, and hence Cole has no legal cause for assailing the judgment.

This disposes of the defendants' appeal.

Proceeding now to a consideration of plaintiff's appeal. The defendants have filed a motion to strike plaintiff's bill of exceptions for the reason that it was not served, settled, and allowed within the time allowed by our statute. Defendants' appeal was from a judgment entered on April 3, 1916. That judgment was thereafter, on May 15, 1916, duly modified in some particulars, and plaintiff's appeal is from that judgment. If it be assumed, however, that for the purpose of plaintiff's appeal the time within which he was required to serve his proposed bill of exceptions commenced to run on April 3d, rather than on May 15th, when the judgment was modified, he nevertheless served his proposed bill of exceptions within the time required by our statute. If it be again assumed that the plaintiff, on the 3d day of April, received notice of the entry of the judgment, then, according to our statute (Comp. Laws 1907, section 3286), he had thirty days thereafter within which to prepare and serve his proposed bill of exceptions. He would thus have had until May 3, 1916, to prepare and serve his proposed bill. On the 22d day of April, 1916, however, he obtained an extension, as he was permitted to do under our statute, of forty-five days' "additional time" within which to prepare and serve his proposed bill of exceptions. Forty-five days

from May 3 would expire on June 17, 1916.  Service of plaintiff's proposed bill was acknowledged by defendants' counsel on the 7th day of June, or ten days before the expiration of the time within which plaintiff was required to serve it.  The bill was afterwards settled, allowed, and filed as required by law, and hence the motion to strike must be overruled.

Proceeding now to the merits of plaintiff's appeal, we find on going into the record that we cannot concur in the conclusion of law and judgment entered by the district court.  It appears from the record that in 1913 J. A. Brown aforesaid sold some property to a Mr. Christensen; that Mr. Brown directed Mr. Christensen to deposit the purchase price, amounting to $1,600, to Brown's credit in the defendant bank; that Christensen did as directed by Brown; that at that time Mr. Brown was quite ill, and he and his wife soon thereafter went to Arizona in hopes of improving his health; that on leaving Utah Mr. Brown left some of his business affairs in charge of the I. N. Porter hereinafter referred to; that said Porter attended to the matters left in his charge, and after adjusting those matters there was a balance remaining in the bank of $380 (the money in question) which was deposited in the name of Porter as Brown's money.  Mr. Brown returned from Arizona in the summer of 1914, but his health had not only not improved, but had in fact grown worse, and he was very feeble.  In August, 1914, Mr. Brown, in writing, assigned said $380, which is the money in question, to the plaintiff, and, in view that it was deposited in the name of Porter, the latter, also in writing, assigned the same to the plaintiff.  These assignments were produced in evidence and are made a part of the record.  Plaintiff notified the bank of the assignments and demanded payment of the money, but the bank refused to pay the same for the reason that Cole claimed some interest therein, as before stated.  Some time after making the assignment Mr. Brown died and the plaintiff thereafter brought this action to recover the money from the bank and made Cole a party defendant in the action.  Cole claimed, and so testified at the trial, that Porter, as Brown's agent, had agreed that said $380 should be deposited in the defendant bank and should be held there until his unsettled

unliquidated claims against Brown could be adjusted, and that the money was deposited in Porter's name for the purpose aforesaid. Porter denied Cole's statement in that regard, and testified that he had never agreed to such an arrangement, and that the money was not deposited upon those or any other conditions affecting Cole.

While it is true that both Mr. Cole and the cashier of the bank testified that Porter had deposited Brown's money as a special deposit, yet, for the reasons hereinafter stated, the evidence is wholly insufficient to justify a finding that Porter had any authority to do that or that Cole by anything that Porter said had acquired any special claim or lien on Brown's money.

The deposit slip was produced in evidence, and nothing is disclosed therefrom indicating that the money was deposited upon any condition whatever. That, in and of itself, constitutes strong evidence against the contention that the money was deposited for a special purpose or was a special deposit, or that Cole, or any one else, had acquired a lien upon or a special claim to the money. *Dearborn* v. *Washington Svs. Bank,* 13 Wash. 345, 42 Pac. 1107.

We are not now dealing with the doctrine of special or specific deposits as the same applies between the bank and its depositors, or between the latter and the bank's general creditors in case of the bank's insolvency. What we are now dealing with is a claim by an entire stranger to a deposit of certain money which he claims was deposited by the agent of the owner of the money upon the condition that the deposit should remain intact until such time as such claimant and the owner of the money should adjust some unsettled and unliquidated claims which the claimant preferred against the owner of the money, and that if, upon such settlement, it should develop that the owner of the money was indebted to the claimant in the amount claimed by him, or in any sum, then the money so deposited, or as much thereof as might be necessary, should be applied in payment of the claim aforesaid. Cole in this case is the claimant, and he thus claims that he has a special claim against or lien upon a certain deposit, and that he has such special

claim or lien by virtue of a contract or agreement entered into between him and the agent of the owner of the money. It is elementary that before Cole can succeed where, as here, his claim is based upon an alleged agreement with the agent of the owner, he must prove: (1) That the deposit was in fact made for the purpose claimed by him; and (2) that the agent had authority to make or to enter into the agreement. Now, all that the evidence shows is that Mr. Brown had given Porter a power of attorney. He had thus constituted Porter his agent for some purpose. What was contained in the power of attorney, however, no one seemed to know. It was also made to appear that Porter did attend to some business matters for Brown, but there is not a scintilla of evidence in the record to show that Brown ever authorized Porter to deposit any of Brown's money upon the condition claimed, or that Porter was authorized to create liens upon or special claims against Brown's money or property. Cole does not claim that Porter had the authority to settle with him and to pay his claim when adjusted. Neither did the court take such a view. Indeed, the court entertained just the opposite view. If, therefore, Porter had no authority to settle with Cole and adjust and pay his claim, if Cole had any, how can it be successfully contended that merely to appoint Porter as Brown's agent for certain purposes Porter could pledge Brown's property or could create a special lien upon it for a past transaction and stale claim? If it be assumed that, in attending to the affairs of Brown, it had become necessary to secure a certain obligation, which was created by Porter himself for Brown's benefit, Porter had the authority to do that as an incident to the main transaction; yet we know of no rule, either in equity or law, which authorizes an agent to pledge the principal's money or property or to create special liens against the same by contract for past claims unless such agent is specially authorized so to do. The evidence as it now stands is therefore wholly insufficient to justify a finding that Brown conferred authority upon Porter to pledge the former's money or property for any purpose, or that Porter could make a special deposit of Brown's money as claimed by Cole, and for the purpose aforesaid. This case, therefore, does not present

a question of the weight or the effect of the evidence, but the case is one where there is an entire absence of legal evidence to establish an essential fact. Under such circumstances the question is one purely of law. The district court, as we have seen, found that Cole had not established his right to the money or to any part thereof. We think that finding is well supported by the evidence. If it is so supported, therefore, we cannot well conceive how the court, from the evidence in the record, arrived at the conclusion that Porter had the authority to bind Mr. Brown or his assignee by entering into an agreement with Cole, who was an alleged creditor of Brown, but with whom Porter was not specially authorized to transact any business for Brown, much less to pledge Brown's money or property as security for Cole's claim, which was unsettled and unliquidated. We repeat, if Porter had no authority to settle or adjust the claim, and no one contends that he had such power, then whence came his power or authority to secure the same by pledging Brown's money or property? The district court, as a matter of course, arrived at the conclusion that Cole had at least the right to establish his claim against the deceased Brown in the probate court, which is the only court in which claims against decedents may be established and allowed. The court also undertook to hold matters in status quo as between Cole and Brown's estate. The court therefore recognized the fact that Brown's assignee had some rights in the premises, and therefore required Mr. Cole to establish his claim in the probate court. The court, however, overlooked the fact that plaintiff had proved that he was the only person who had the absolute legal right to the money in question by virtue of Brown's and Porter's assignments. As soon as those assignments were delivered to the plaintiff the right and title to the money, notwithstanding Cole's claim, passed to plaintiff, and it thereafter no longer was Brown's money, or, on his death, a part of his estate. The court, under the circumstances, was powerless to hold the money in court until Cole, as Brown's creditor, should establish his claim against Brown's estate. If Cole has a claim against Brown's estate, he may, as a matter of course, establish it in the probate court, and he may then

obtain satisfaction thereof out of any property belonging to the estate, but he may not lay claim to property which in good faith passed from Brown in his lifetime to another. That is just what was attempted in this case, however.

For the reasons stated the judgment is reversed, and the cause is remanded to the district court of Box Elder County, with directions to grant plaintiff a new trial and to proceed with the case in accordance with the views herein expressed; defendants to pay the costs on their appeal, and also to pay the costs on plaintiffs' appeal.

McCARTY and CORFMAN, JJ., concur.